IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **2525 CAPITAL GROUP, LLC** and | § | |
| **DALLAS NURSING HOME, LLC,** | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action **No. 3:08-CV-1673-L** |
| | § | |
| **DALLAS HOME FOR JEWISH** | § | |
| **AGED, INC**., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On December 16, 2009, the parties agreed to resolve their remaining disputes by submission upon stipulated facts and affidavits. The parties filed stipulated facts on December 23, 2009, and additional stipulated facts on January 10, 2010. Plaintiffs 2525 Capital Group, LLC ("2525") and Dallas Nursing Home, LLC ("DNH") (collectively, "Plaintiffs") filed their trial brief on January 11, 2010. Defendant Dallas Home for Jewish Aged, Inc. ("DHJA" or "Defendant") filed its response on January 18, 2010, and Plaintiffs replied on January 28, 2010. The court therefore treats the dispute before it like a bench trial. It considers the record closed and relies only upon the evidence and stipulated facts submitted by the parties.

The parties contend that there are no factual issues to resolve and that the court must only decide the remaining legal issues. Plaintiffs seek: (1) a declaratory judgment that 2525 is the assignee of all of DHJA's interest in certain intellectual property; (2) a declaratory judgment that DJHA's purported termination of Plaintiffs' right to use the name "Golden Acres" is void and of no effect; (3) an order requiring DHJA to execute and deliver to Plaintiffs documents as may reasonably be necessary to effect the assignment of all of DHJA's right, title, and interest to certain intellectual

property and related e-mail and web addresses; and (4) attorney's fees for certain contract claims that were settled.  Defendant contends that Plaintiffs are not entitled to any of the relief that they seek.

## I.     Factual Background

Although the parties have agreed to the stipulated facts in this case, the court sets forth some of the relevant history before it reaches the legal questions that remain.  This dispute relates to the sale of Golden Acres, a faith-based living and nursing facility established in 1953 by DHJA and its parent charitable organization, the Legacy Senior Committee (the "Facility").

On May 16, 2007, American Health Corporation ("American Health") entered into an Asset Purchase Agreement (the "APA") with DHJA.  The APA provided for the sale of various real, personal, tangible, and intangible assets used in or associated with the Facility.  The APA did not include the sale of the name "Golden Acres," or other trademarks, copyrights, and trade names; these were designated "Excluded Assets."  The APA provided that a licensing agreement would be provided at closing, but no form of license agreement was attached to the APA.  DHJA proposed a license agreement prior to closing, but it was not accepted by American Health or Plaintiffs.  No license agreement was executed in connection with the sale.

American Health assigned its right, title, and interest in the APA to Plaintiff 2525 on July 13, 2007.  During the time 2525 owned the Facility, it was operated by Plaintiff DNH.

Prior to the closing of the sale, several other documents were executed between the parties, including:  First Amendment to Asset Purchase Agreement; Second Amendment to Asset Purchase Agreement; an Escrow Agreement and Second Amendment to Asset Purchase Agreement; and an Escrow Agreement relating to accrued vacation of employees.  Plaintiffs and Defendant were

represented by counsel, who communicated about the closing documents prior to closing.  Counsel discussed both a license agreement and a bill of sale prior to the closing.  The transaction closed on October 1, 2007.  In connection with the closing, 2525 and DHJA signed a Bill of Sale and Assignment (the "Bill of Sale").

After closing, several disputes arose.  On August 1, 2008, DHJA sent a letter to American Health stating that it "will not renew the License Period per the License Agreement executed between [DHJA] and American Health . . . ."  Ex. 11, GA 268.  That letter further stated:  "This notice has no effect on the rights and obligations of the parties as described in the Asset Purchase Agreement."  *Id*.  In May 2009, Plaintiffs' access to and use of e-mails using goldenacres.org e-mail addresses was disrupted, and at various times, attempts to access goldenacres.org redirected to DHJA's website.  DHJA maintains control over the goldenacres.org website and related e-mail addresses.

The live pleading is Plaintiffs' Second Amended Complaint, filed September 23, 2009.  They brought claims of breach of contract against Defendant and sought a declaratory judgment and attorney's fees.  With respect to their breach of contract claims, Plaintiffs alleged that Defendant breached their agreements by:  failing to forward payments from third-party payors to them that relate to the period after closing; blocking distributions owed to them for accrued vacation for employees; employing twenty-three Golden Acres employees since the closing; and wrongfully removing a golf cart from the Facility.  Plaintiffs also seek declaratory relief.  With respect to this claim, they contend that Defendant attempted to terminate a license agreement that does not exist, that Defendant failed to convey certain intellectual property to them, that Defendant abandoned its

use of the name "Golden Acres," and that DNH properly filed an assumed name certificate with the Texas Secretary of State for the name "Golden Acres."

Defendant also brought a counterclaim against Plaintiffs.  Its Amended Answer and Counterclaim was filed October 30, 2009.  It sought a declaration that certain gifts were excluded from the sale pursuant to the APA and that it was entitled to recover certain gifts from Plaintiffs notwithstanding the change in ownership.

Pursuant to the parties' December 16, 2009 stipulation, all but two issues have been settled. The court now addresses the remaining issues:  (1) Plaintiffs' request for a declaratory judgment and other relief relating to certain intellectual property; and (2) Plaintiffs' claim for attorney's fees.

## II.      Assignment of Golden Acres Intellectual Property

The court first addresses Plaintiffs' requests for declaratory judgment and an order relating to the assignment of certain intellectual property.  Plaintiffs argue that the trade name "Golden Acres," the domain name "goldenacres.org," and related  e-mail and web addresses (collectively, the "Golden Acres Intellectual Property") were unambiguously assigned to them in the October 1, 2007 Bill of Sale.  They further argue that it is clear that the Bill of Sale was to be the operative document in the transaction with 2525.  Plaintiffs contend that there is no basis for reforming the Bill of Sale and that there can be no claim of mutual or unilateral mistake.

Defendant responds that the parties expressly intended to exclude the name "Golden Acres" and other intellectual property from the sale.  It contends that the court should not recognize the term in the Bill of Sale relating to the disputed intellectual property because it directly contradicts the APA and was not supported by new consideration.

**Memorandum Opinion and Order - Page 4**

Section 1.2 of the APA is titled "Excluded Assets," and provides:

> The following items are not intended by the parties to be a part of the sale and purchase contemplated hereunder ("**Excluded Assets**");
>
> (i)   Seller's name, goodwill, trademarks, trade names, and copyrights. . . .
>
> (xi)   the name "Golden Acres" and all other trademarks, copyrights and trade names of Seller (whether or not registered) . . . .

Ex. 1, GA 4-5 (original emphasis).[1]  Section 2.2(x) states that, at closing, the seller shall deliver to the buyer "the License Agreement pursuant to which Seller will grant to the Buyer a limited right license to use the name 'Golden Acres' in the form of Exhibit 2.2(x) hereto." *Id.*, GA 9-10 (original emphasis).  There is no Exhibit 2.2(x) attached to the APA.  Section 2.2(ii) also states that at closing the seller shall deliver to the buyer "a general Bill of Sale, Assignment and Assumption Agreement, conveying to Buyer good title to all other Assets and pursuant to which Buyer would assume the Assumed Contracts (the "**Bill of Sale**")." *Id.*, GA 9 (original emphasis).  Section 2.3 states that at closing, the Buyer shall deliver or execute "the License Agreement" and the "Bill of Sale." *Id.*, GA 10.

The Bill of Sale includes a list of items being assigned by DHJA to 2525.  This list includes: "all copyrights, trademarks, trade names (including, without limitation, the trade name 'Golden Acres'), fax numbers, telephone numbers, domain names, and e-mail addresses, web addresses and other intellectual property used in connection with the Property and all goodwill associated therewith and rights to recover of infringement thereof . . . ."  Ex. 10, GA 61.

---

[1]Exhibit numbers refer to the numbers used for the exhibits attached the stipulated facts, filed December 23, 2009.  Because the page numbers of these exhibits were not renumbered sequentially, the page numbers refer to the page numbers on those exhibits.

Although Plaintiffs spend much of their opening brief explaining why the court should not reform the Bill of Sale, Defendant does not argue that reformation is appropriate in this case. Instead, it contends that the court should ignore the purported sale of the Golden Acres Intellectual Property in the Bill of Sale because it directly contradicts the APA and is not supported by separate consideration.

Under Texas law, "A party is entitled to reformation of a deed upon proving the party had reached an agreement with the other party but the deed did not reflect the true agreement because of a mutual mistake.  Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake."  *Davis v. Grammar*, 750 S.W.2d 766, 768 (Tex. 1988) (citations omitted).  Neither Plaintiffs nor Defendant asks the court to reform the APA or the Bill of Sale, and the court agrees that reformation is unwarranted.  There is no evidence in the record before the court of mutual or unilateral mistake with knowledge of that mistake by the other party. The evidence suggests a disagreement between the parties as to the legal effect of the Bill of Sale on the APA.

Defendant contends that the inclusion of the Golden Acres Intellectual Property in the Bill of Sale was a modification of the APA that was not supported by separate consideration and therefore has no legal force or effect.  Plaintiffs contend that the court should enforce the Bill of Sale and find that Defendant sold the Golden Acres Intellectual Property to them.

The APA is not ambiguous; at the outset of this transaction, the Golden Acres Intellectual Property was clearly excluded from the sale and was specifically defined as Excluded Assets.  The court must determine what effect the Bill of Sale, which includes a term that is contrary to the APA, has on this transaction.  Plaintiffs contend that, if the Bill of Sale modified the APA, it was a

modification with consideration that is valid.   Defendant argues that, because there is no

consideration to support modification of the APA, the court should disregard the inconsistent terms.

The court must then consider whether the contract was modified.   Texas law provides:

> Parties have the power to modify their contracts.   A
> modification must satisfy the elements of a contract:  a meeting of the
> minds supported by consideration.   Whether a contract is modified
> depends on the parties' intentions and is a question of fact.   The
> burden of proving modification rests on the party asserting the
> modification.

*Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228-29 (Tex. 1986) (citations omitted).

The court first considers whether there was consideration to support modification of the

APA.   Defendant argues that there is no modification as a matter of law because there was no

separate consideration to support the Bill of Sale.   Plaintiffs argue that there is valid consideration

for the modification.   They argue that the parties' ongoing obligations to each other are sufficient

consideration and that Defendant is estopped from arguing lack of consideration.   The court must

therefore first determine whether there is consideration to support a modification of the APA.

The terms of the APA call for a purchase price of $7,900,000 of the assets as defined by that

agreement.   The APA also included references to both a license agreement and a bill of sale.   The

Bill of Sale included a term stating that the agreements therein were made "in consideration of Ten

and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and legal

sufficiency of which are hereby acknowledged."   Ex. 10, GA 61.

Defendant cites several cases for the proposition that a modification must be supported by

new consideration.   Among the cases cited by Defendant is *Hathaway*, which the court has already

considered.   In *Walden v. Affiliated Computer Services, Inc.*, the court noted:  "Texas courts have

consistently adhered to the rule that a modification to a contract must itself be supported by

consideration to be valid." 97 S.W.3d 303, 314 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (citations omitted).  Defendant also cites *Rhoads Drilling Co. v. Allred*, in which the court, citing a treatise, stated that parties "may modify their contract in any manner they choose; and that generally a new consideration is required in order for an attempted modification of a contract to be valid." 70 S.W.2d 576, 583 (Tex. 1934).  Finally, Defendant relies upon *Bates Grain Co. v. Cassidy*, in which the court held:  "If there was a prior concluded contract entered into by the parties, a subsequent contract on the same subject matter at variance with or contradictory to the prior subsisting contract, without new consideration, the subsequent contract is of no legal force or effect." 225 S.W.2d 1018, 1019 (Tex. App. – Dallas 1950, writ ref'd n.r.e.).  Defendant argues that the transaction closed for the same purchase price as set forth in the APA, and it contends that this demonstrates the lack of consideration to support modification of that agreement.

In response, Plaintiffs argue that the parties' ongoing obligations to each other are sufficient to satisfy the consideration requirement.  It cites *Enserch Corp. v. Rebich*, 925 S.W.2d 75 (Tex. App. – Tyler 1996, writ dism'd), in which the court considered whether three subsequent letters from a buyer to a seller stating that it intended to pay lower prices modified the parties' original contract. The court noted the general legal standard:

> Modification of a contract is some change in an original agreement which introduces a new or different element into the details of the contract but leaves its general purpose and effect undisturbed.  Even if there is no evidence of other valuable consideration for the modification, the continuing mutual obligations by the parties will furnish sufficient consideration to support a binding modified contract.  Furthermore, it has been held that no showing of consideration for the contract modification is required as long as it is made in good faith.

*Id.* at 83 (citations omitted).  The court found that the original contract had been modified and noted that the sellers accepted the lower prices:  "This conduct . . . is relevant to show modification of a contract.  A party that accepts a changed price is deemed to have made its own decision that it is just; if it thinks otherwise, it should resist."  *Id.* (citations omitted).

The court agrees with Plaintiffs and finds that there is evidence of consideration to support modification of the contract.  First, the parties have ongoing obligations to each other pursuant to the APA.  Second, the Bill of Sale specifically includes a statement that it is made "in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged."  Ex. 10, GA 61.  In addition, although Defendant argues that there was no change in the Purchase Price between signing the APA and closing, the court notes that the license agreement proposed by Defendant, but ultimately not signed, only required a license fee of $1 per year to license the Golden Acres Intellectual Property.  Ex. 2, DJHA 3762, ¶ 3.  Defendant's willingness to license the Golden Acres Intellectual Property for $1 per year does not square with its argument that the Bill of Sale lacked consideration because it did not increase the Purchase Price set forth in the APA.  In light of the evidence before the court, it concludes that Plaintiffs have shown that there is consideration for the modification.

Consideration alone is not enough to conclude that the parties intended to modify the APA.  The court must also determine if there was a meeting of the minds with respect to the modification.  Neither side extensively briefs this element.  Plaintiffs argue that Defendant sold them the Golden Acres Intellectual Property when it signed the Bill of Sale, which included those assets.  Defendant only addresses the consideration element.

**Memorandum Opinion and Order - Page 9**

The court determines that the evidence before it supports the conclusion that the parties intended to modify the APA by including the Golden Acres Intellectual Property with the sale of the Facility.  First, there is no question that the Bill of Sale, which included the Golden Acres Intellectual Property in the list of items assigned to 2525, was signed by Defendant's president, Michael Ellentuck.  Ex. 10, GA 64.  It is also clear that both parties were represented by counsel in connection with the closing of the sale of the Facility; 2525 was represented by Haskins W. Jones, and Defendant was represented by Farley G. Houston and Andrews Kurth LLP.  Stipulated Fact 9. Texas courts "have always presumed that a party who signs a contract knows its contents."  *In re Bank of America, N.A.*, 278 S.W.3d 342, 344 (Tex. 2009) (quotation and citation omitted). Moreover, Texas courts have held that a "party's signature on a written contract is strong evidence that the party unconditionally assented to its terms."  *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex. App. – El Paso 2009, no pet.) (quotation and citation omitted).  There is no allegation, or evidence, by any party that there was mistake, fraud, duress, or accident with respect to Defendant's signing the Bill of Sale.[2]

Second, the evidence demonstrates that the Bill of Sale that was signed at closing, which included the Golden Acres Intellectual Property as an asset to be assigned, was a document proposed by Defendant.  On September 28, 2007, Houston sent an e-mail to Jones with three attachments.  Ex. 4, DHJA 3564.  The attached proposed bill of sale contained the clause, which was ultimately a part of the signed document that included the Golden Acres Intellectual Property as an item to be

---

[2]Defendant raised the doctrine of mistake as an affirmative defense.  Answer § VII(8).  Defendant did not raise the defense of mistake in its trial brief and it agreed "to resolve all remaining issues in dispute by submission upon stipulated facts and affidavits . . . ." Stipulation (Dec. 16, 2009).  In light of the parties' stipulation, Defendant's trial brief, and the evidence submitted by the parties, the court determines that any defense of mistake has been waived by DHJA.

**Memorandum Opinion and Order - Page 10**

assigned.  *Compare* Ex. 4, DHJA 3663 ("all copyrights, trademarks, trade names (including, without limitation, the trade name 'Golden Acres'), fax numbers, telephone numbers, domain names and e-mail addresses, web addresses and other intellectual property used in connection with the Property and all goodwill associated therewith and rights to recover for infringement thereof . . . .") *with* Ex. 10, GA 61 (same).  On October 1, 2007, Houston sent another e-mail to Jones attaching several closing documents.  Ex. 7, DHJA 4339.  The attached proposed bill of sale contained the same phrase including the Golden Acres Intellectual Property as an asset to be assigned.  Ex. 7, DHJA 4375.  Finally, on October 2, 2007, Houston sent an e-mail to Robin Buckelew, copying Jones, which stated:  "The Bill of Sale you received from Mr. Nelson is NOT acceptable.  Please use the one we provided instead and discard the version prepared by Mr. Nelson."  Ex. 9, DHJA 4450 (original emphasis).  The Nelson version is not in the record.  Based on the evidence before the court, it is clear that the Bill of Sale that was signed by the parties at closing, and which included the Golden Acres Intellectual Property as an asset to be assigned to 2525, was drafted by Defendant.

In light of the evidence before the court, it concludes that the parties intended to, and did, modify the APA and that there was consideration to support such modification.  Accordingly, the court determines that the parties not only intended but specifically included the Golden Acres Intellectual Property with the sale of the Facility.  The court will therefore grant the declaratory and other relief sought by Plaintiffs to enforce the Bill of Sale.

## III.     Attorney's Fees

The other issue to be resolved is whether Plaintiffs are entitled to attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code for their breach of contract claims relating to accounts receivable and employee accrual.  They contend that they have satisfied the

statute and that the claims were resolved by settlement, rather than trial, is irrelevant.  They argue that to hold otherwise would be inconsistent with the public policy favoring settlement of claims.

Defendant responds that Plaintiffs have not satisfied the statute because they did not secure an enforceable judgment or obtain other judicially-sanctioned relief.  It also notes that the settlement agreement specifically stated that it was not an admission of liability.  Ex. 12, p. 7, § 11.

Chapter 38 of the Texas Civil Practice and Remedies Code provides for the recovery of attorney's fees in certain circumstances.  To recover such fees, a plaintiff must:  "(1) prevail on a breach of contract claim, and (2) recover damages." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009).  In this case, the parties' dispute is whether Plaintiffs prevailed on the settled claims.

Defendant argues that to prevail, Plaintiffs must have secured an enforceable judgment or other judicially-sanctioned relief.  It cites *Intercontinental Group Partnership v. KB Home Lone Star, L.P.*, in which the Texas Supreme Court recently held that to recover under Chapter 38, "a plaintiff must prove compensable injury and secure an enforceable judgment in the form of damages or equitable relief."  295 S.W.3d 650, 652 (Tex. 2009).  In that case, the court further held: "Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable."  *Id*. at 655.  The Texas Supreme Court also cited extensively to federal law in that decision, and Defendant also cites *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Services*, 532 U.S. 598 (2001).  In *Buckhannon*, the Court noted that the "view that a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases."  *Id*. at 603 (footnote omitted).  After considering several prior decisions, the Court held that "enforceable judgments on the merits and court-ordered

consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id*. at 604 (citations and internal quotations omitted).

Plaintiffs have failed to meet the requirements for an award of attorney's fees under Chapter 38 as set forth by the Texas Supreme Court in *Intercontinental Group*. There is simply no "enforceable judgment in the form of damages or equitable relief" secured by Plaintiffs. 295 S.W.3d at 652. The parties' settlement requires no action by the court.

Plaintiffs' reliance on other cases is unavailing, because none of these cases predates *Intercontinental Group* or considers Chapter 38. *See Boyd v. Texas*, 301 Fed. App. 363, 367 (5th Cir. 2008) (42 U.S.C. § 1988); *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, (5th Cir. 1990) (Handicapped Children's Protection Act of 1986); *Theresa Diane P. v. Alief Indep. Sch. Dist.*, 744 F.2d 484 (5th Cir. 1984) (Education of All Handicapped Children Act, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983); *Gram v. Bank of Louisiana*, 691 F.2d 728 (5th Cir. 1982) (15 U.S.C. § 1640(a)(3) of the Truth-in-Lending Act). Plaintiffs cite no cases to support the proposition that plaintiffs who favorably settle breach of contract claims are entitled to attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, and the court declines the invitation to accept their novel argument and award attorney's fees. It is the Texas Supreme Court, not federal courts, that decides how Texas statutes are to be interpreted and applied. Under *Intercontinental Group*, Plaintiffs have not obtained an enforceable judgment on damages or equitable relief as to the settled claims.

The court determines that Plaintiffs are not entitled to recover attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code for these settled breach of contract claims. Accordingly, the court **denies** Plaintiffs' request for attorney's fees.

**Memorandum Opinion and Order - Page 13**

## IV.  Conclusion

For the reasons stated herein, the court **grants** Plaintiffs' request for declaratory and other relief, as herein specified, with respect to the Golden Acres Intellectual Property.  The court **denies** Plaintiffs' request for attorney's fees for their settled breach of contract claims.

Accordingly, the court hereby **declares** that 2525 Capital Group, LLC is the assignee of all of the right, title, and interest of Defendant in the trade name "Golden Acres," the domain name "goldenacres.org," and related e-mail and web addresses.  The court further **declares** that the purported termination by Defendant of Plaintiffs' right to use the name "Golden Acres" in connection with the operation of the Facility is void and of no effect.  The court hereby **orders** that Defendant execute and deliver to Plaintiffs such documents as may be reasonably necessary to effect the assignment of all of its right, title, and interest to the domain name "goldenacres.org," and related e-mail and web addresses to 2525 Capital Group, LLC or its assignee by **August 12, 2010**. The court will issue judgment by separate document.

**It is so ordered** this 11th day of June, 2010.

Sam A. Lindsay
United States District Judge